UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No.   3:17-CR-42-TAV-HBG |
| JAMES DELANEY BAZZOON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 42]. Federal Defender Services of East Tennessee have filed a notice setting forth that they will not be supplementing the pro se motion [Doc. 45], and the United States has responded to the motion [Doc. 47]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motions will be **DENIED**.

### I.   Background

On November 21, 2013, defendant was convicted, pursuant to his plea, of conspiracy to manufacture 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) and sentenced to a term of imprisonment of 72 months and a term of supervised release of 4 years [Doc. 14, Presentence Investigation Report at ¶ 6]. That sentence was later reduced to 60 months based on Amendments 782 and 788 of the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2) [*Id.*]. The defendant was scheduled to complete his sentence in May 2017 [*Id.*]. On or around March 14, 2017,

the Bureau of Prisons ("BoP") transferred defendant to Midway Rehabilitation Center in Knoxville, Tennessee [*Id.* at ¶ 7]. Upon arriving at the facility, defendant tested positive for codeine [*Id.*]. On March 22, 2017, defendant was given another drug test which tested positive for oxymorphone [*Id.*]. On March 27, 2017, defendant escaped from the facility, though he had not yet completed his custodial sentence [*Id.*].

On April 18, 2017, defendant was indicted for violating 17 U.S.C. § 751(a) and 4082 for escaping from the custody of Midway [Doc. 1]. On June 21, 2017, defendant pleaded guilty to the one count indictment [Doc. 13], and defendant was sentenced to 15 months, to run consecutive to the remainder of his sentence for the conspiracy to manufacture 5 grams or more of methamphetamine, followed by three years of supervised release [Doc. 21].

On November 27, 2018, defendant was released from the custody of the BoP to begin his term of supervised release [Doc. 24]. While on supervised release, defendant failed drug tests on November 29, 2018, and December 4, 2018 [*Id.*]. On December 14, 2019, during a home visit by a probation officer, the defendant admitted that, if tested that day, he would test positive for drug use [*Id.*]. On January 17, 2019, and February 7, 2019, defendant again tested positive for drug use [*Id.*].

On February 14, 2019, during another home visit by probation, defendant was caught attempting to use a bottle containing fake urine to falsify the results of a drug test [*Id.*]. At that time, the probation officers searched the defendant's home and found drugs and drug paraphernalia. On February 28, 2019, a warrant was issued for the defendant's

2

arrest for his violation of the terms of his supervised release [*Id.*]. The defendant was detained and entered into an Agreed Order of Revocation which sentenced him to a time served sentence of 3 months and 20 days, with 45 months of supervised release [Doc. 32].

The defendant again repeatedly violated the terms of his supervised release and a warrant was issued for his arrest on September 12, 2019 [Doc. 33]. The defendant entered into another Agreed Order of Revocation and was sentenced to a term of imprisonment of 20 months, with no supervised release to follow [Doc. 41].

Defendant is housed at FCI Hazelton, which currently has four (4) active cases of COVID-19 amongst the inmates and four (4) active cases amongst the staff. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 29, 2021). Defendant is forty-one (41) years old and suffers from, among other ailments, Hepatitis B and C and mental health issues [Doc. 51]. He is scheduled for release on June 8, 2021. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 29, 2021). On March 9, 2021, the defendant received the first dose of a COVID-19 vaccination [Doc. 51]. Defendant also asserts that he suffers from hypertension, but his medical records do not list that condition [Docs. 42 and 51].

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323,

3

326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 42].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]"

4

whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct.

5

13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The United States concedes that the exhaustion requirement has been met [Doc. 47]. Thus, the Court may consider the merits of defendant's request.

**B.     Extraordinary and Compelling Reasons**

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 at 519. Here, the defendant has not shown "extraordinary and compelling reasons" for his release; thus the Court need not address the § 3553(a) factors.

The Centers for Disease Control have identified several health conditions which increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 29, 2021). The Sixth Circuit has held that it is appropriate for a court to consider the CDC guidelines in assessing compassionate release motions. *Elias*, 984 F.3d at 521. Defendant's health conditions identified in his medical records are not recognized by the CDC as COVID-19 risk factors.

Defendant argues that he faces a risk of death if he contracts COVID-19. While the COVID-19 pandemic is very serious, this Court agrees with other courts that have concluded that the COVID-19 pandemic alone does not justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, 2020 WL

6

1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"). Furthermore, defendant's medical records establish that he has already received the first of two doses of a COVID-19 vaccination, which reduces defendant's risk of contracting COVID-19 [Doc. 51].

The Court finds that defendant has not established the "extraordinary and compelling reasons" needed to justify compassionate release, and therefore his motion will be **DENIED**.

### C. Request for Counsel

Defendant's motion includes a request that the Court appoint counsel to represent him in seeking compassionate release. This Court's Standing Order No. 19-04 provides, in pertinent part:

> Federal Defender Services of Eastern Tennessee ("FDSET") is hereby **APPOINTED** to represent a defendant if that defendant files a section 3582(c)(1)(A) motion directly with this Court pursuant to section 603(b) of the FIRST STEP Act. FDSET shall file a supplement to defendant's pro se motion without delay. If FDSET determines that defendant's motion needs no supplementation, then FDSET shall file a notice stating so. FDSET shall also notify the defendant that it will not file a supplemental motion.
>
> FDSET is also **APPOINTED** if a defendant contacts FDSET to file the motion on the defendant's behalf and if FDSET determines the motion would

7

> not be frivolous. In addition, previously-appointed CJA counsel may file a motion on behalf of their clients if contacted to do so and if the previously-appointed CJA counsel determines the motion would not be frivolous. FDSET or another attorney appointed pursuant to this Order shall file a non-frivolous motion on the defendant's behalf without delay.

SO 19-04. Thus, the Court has already appointed FDSET to assist in appropriate compassionate release cases. FDSET filed a Notice that it has reviewed this case, as required by the Standing Order, and indicated that it will not be filing a supplement [Doc. 45].

To the extent that defendant may argue that FDSET's failure to file a supplement on his behalf somehow prejudices him, the Court notes that there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary pro se litigant. Accordingly, defendant's request for the appointment of counsel is **DENIED**.

8

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motion [Doc. 42] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
